UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
SUSAN RUSSO, on behalf of herself and    Case No.
all other persons similarly situated,    _____

           Plaintiff,    **CLASS ACTION COMPLAINT
                                      & DEMAND FOR JURY TRIAL**

      v.

ADORNMONDE, INC.,

                Defendant.
-------------------------------------------------------------------

      Plaintiff, SUSAN RUSSO ("Plaintiff" or "Ms. Russo"), on behalf of herself and all other persons similarly situated (collectively, "Plaintiff"), by and through their undersigned counsel, JOSEPH & NORINSBERG, LLC, as and for their putative class action complaint upon Defendant, ADORNMONDE, INC. (hereinafter "Adornmonde" or "Defendant"), hereby alleges as follows:

## INTRODUCTION

1.    Plaintiff, Susan Russo, is a visually-impaired and legally blind individual who requires screen-reading software to access digital content. She has been diagnosed with Diabetic Retinopathy, resulting in permanent and severe central and peripheral vision loss, with visual field limitation less than 20 degrees in her better eye. Her condition is non-correctable and qualifies as legal blindness under federal standards. (See Ex. A — Medical Diagnosis, dated April 25, 2025).

2.    Plaintiff relies on Nonvisual Desktop Access ("NVDA") screen-reading software to navigate websites. NVDA translates visual web content into auditory output, enabling blind users to interact with digital platforms.

**3.    On multiple occasions in January, March, and May 2026, Plaintiff attempted to access** Defendant's public-facing website, **www.adornmonde.com**, to browse and purchase fine jewelry products, including the Adornmonde Gold Maddox Heart Diamond

Necklace and the Adornmonde Gold Alfred Diamond Mini Hoop Piercing. Plaintiff was repeatedly denied meaningful access due to widespread accessibility barriers, including missing alternative text on product and linked images, missing and empty form labels, spacer images missing alternative text, empty buttons, and empty links that announced no destination or purpose to screen-reader users.

4.    Defendant Adornmonde, Inc. is a corporation organized under the laws of the State of Nevada, with its principal place of business at 5555 Silver Hills Circle, Sparks, Nevada 89431. Defendant operates the "Adornmonde" brand and conducts business through its e-commerce website, **www.adornmonde.com**, which serves as a primary platform for product display, online sales, promotional campaigns, and customer engagement, accessible to consumers throughout the United States, including within this District.

5.    Plaintiff's choice to shop at Adornmonde was not arbitrary. Ms. Russo suffers from Diabetic Retinopathy, a condition that impairs her vision and requires her to shop for jewelry and accessories online, relying entirely upon the accessibility of e-commerce websites to independently browse, evaluate, and purchase products. Plaintiff specifically sought Adornmonde's products because Adornmonde is among the only fine jewelry brands to offer solid 14-karat gold, lab-grown diamond, and conflict-free fine jewelry specifically engineered for long-term, 24/7 wear — including proprietary piercing jewelry designed to be left in continuously, without the irritation caused by low-quality metals — a medical benefit for individuals like Plaintiff whose Diabetic Retinopathy and associated skin sensitivities require hypoallergenic, non-reactive metals in direct skin contact. Defendant's Gold Maddox Heart Diamond Necklace and Gold Alfred Diamond Mini Hoop Piercing are not available in equivalent formulation, material grade, and design from any comparable single retailer, making Defendant's website a uniquely necessary source of access.

6.    **Plaintiff seeks injunctive and declaratory relief to compel Defendant to**

**remediate its** website, implement accessibility monitoring, and adopt policies that ensure blind and visually impaired users can access its services with independence, dignity, and equity.

7.     Congress provides a clear and national mandate for the elimination of discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, both New York State and New York City law require places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

8.     Defendant's website is not equally accessible to blind and visually impaired consumers; therefore, Defendant violates the ADA, NYSHRL, NYCHRL, and NYCRL. Plaintiff now seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that its website will become and remain accessible to blind and visually-impaired consumers.

**JURISDICTION AND VENUE**

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this case arises under the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business within this District, and the acts and omissions giving rise to the claims occurred within this District.

10.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., ("NYCHRL") & § 296 et seq.; and the New York State Civil Rights Law, Article 4, § 40-c and § 40-d ("NYCRL").

11.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), in that Defendant conducts and continues to conduct a substantial and significant amount of business in this District via the Internet, and a substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize, on several occasions, the subject Website, **www.adornmonde.com**, within her home in New York County, New York, located within this Judicial District.

12.     Defendant Adornmonde, Inc. is a corporation organized under the laws of the State of Nevada, with its principal place of business at 5555 Silver Hills Circle, Sparks, Nevada 89431. Defendant transacts business nationwide through its digital storefront, **www.adornmonde.com**, which serves as its primary platform for product display, e-commerce transactions, promotional campaigns, and customer engagement.

13.     Plaintiff seeks declaratory and injunctive relief to compel Defendant to remediate its website, implement ongoing accessibility monitoring, and ensure compliance with Federal, State, and City Laws, Statutes, and Regulations. This action is not merely seeking technical compliance — it is a demand for dignity, equity, and lawful access to essential services.

14.     Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services offered to the general public on Defendant's Website in New York County. These access barriers have caused a denial of Plaintiff's full and equal access multiple times in the past and now deter Plaintiff regularly from accessing Defendant's Website **www.adornmonde.com** in the future.

15.     The United States Department of Justice Civil Rights Division has recently stated that, "[t]he Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web." (See Guidance on Web Accessibility and the ADA.)

Plaintiff is unable to utilize a computer or device without the assistance of screen-reading software, such as Nonvisual Desktop Access or "NVDA."

16.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## NATURE OF ACTION

17.     The Internet is a vital tool for accessing consumer goods and services, especially for blind and visually impaired individuals. Screen-reading software allows users to navigate websites using auditory cues and keyboard commands. For this technology to function, websites must be coded with semantic structure, ARIA roles, and accessible markup.

18.     Defendant's website, **www.adornmonde.com**, fails to meet these standards. Plaintiff's repeated attempts in January, March, and May 2026 to browse and purchase fine jewelry products were blocked by pervasive accessibility barriers. These barriers were confirmed by a technical audit conducted using the WAVE Web Accessibility Evaluation Tool (Ex. B and C).

19.     Common accessibility failures documented on the Website's product pages include:

• Missing alternative text on product images — screen reader announces only "graphic" with no product name or description;

• Linked images missing alternative text — six (6) instances on the Maddox Heart Diamond Necklace product page and eight (8) instances on the Alfred Diamond Mini Hoop Piercing product page, causing NVDA to announce only "link" with no destination or product context;

• Spacer images missing alternative text — fourteen (14) instances on the Necklace product page and eighteen (18) instances on the Piercing product

page, each announced as "graphic" by NVDA with no content or context communicated;

• Missing form labels — three (3) instances on the Necklace page and four (4) instances on the Piercing page, including interactive controls for product options and site search, rendering those controls inaccessible by name;

• Empty form labels — two (2) instances per page, where form controls carry label elements that contain no text, providing no accessible name to the screen reader;

• Empty buttons — twenty-eight (28) instances per page, where buttons contain no text or accessible label and are announced by NVDA only as "button" with no purpose or action communicated; and

• Empty links — two (2) instances on the Piercing product page, where links contain no text or alternative text, announced by NVDA only as "link" with no purpose or destination communicated.

20.     These barriers are not isolated glitches. They reflect **systemic design failures** that deny blind users the ability to shop independently. The absence of WCAG 2.1 Level AA compliance constitutes unlawful discrimination under Title III of the ADA, 42 U.S.C. § 12182.

21.     Plaintiff's connection to Defendant's brand is not speculative. Ms. Russo was specifically drawn to Adornmonde's product line because of its proprietary "Lazy Girl Jewelry®" design philosophy — solid 14-karat gold piercing jewelry engineered for continuous, 24/7 wear without removal, a critical consideration for individuals with Diabetic Retinopathy and associated skin sensitivities, who require hypoallergenic metals in constant skin contact. The Gold Maddox Heart Diamond Necklace is crafted from 14-karat solid gold with a lab-grown diamond, offering the hypoallergenic properties Plaintiff requires. The Gold

Alfred Diamond Mini Hoop Piercing is similarly crafted from 14-karat solid gold with a diamond — a combination of material purity and jewelry design not available in equivalent specification from any comparable mainstream retailer. These products are not readily available in equivalent formulation from other retailers, making Defendant's website the exclusive channel for access.

22.     In today's tech-driven world, blind and visually impaired people rely on screen-reading software to independently access websites. Unless websites are designed to be compatible with such software, blind users are excluded from the same content available to sighted users.

23.     The World Wide Web Consortium ("W3C") publishes the Web Content Accessibility Guidelines ("WCAG"), currently at version 2.1. These guidelines are the global standard for digital accessibility and are followed by major corporations and government agencies to ensure compliance. Defendant's failure to adhere to WCAG 2.1 demonstrates systemic neglect of accessibility obligations.

**24.     Websites are dynamic platforms, updated daily or hourly. A one-time fix does not** ensure lasting accessibility. Defendant must adopt ongoing monitoring protocols, including automated testing and live-user audits by disabled individuals, to ensure sustained compliance.

25.     Without injunctive relief, Plaintiff and other blind consumers will continue to be excluded from Defendant's online channel of commerce. The harm is ongoing, repeatable, and preventable.

<u>**STANDING**</u>

26.     Plaintiff, Susan Russo, is a blind, visually-impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq., and NYCHRL. To access the Internet, she must

utilize a computer equipped with screen-reading software, such as NVDA for Windows.

27.    Screen-reading software translates visual web content into auditory output. As explained in *Andrews v. Blick Art Materials, LLC,* 286 F.Supp.3d 365, 375 (E.D.N.Y. 2017), screen readers use auditory cues to replicate the visual experience of navigating a website. When properly coded, links are announced as "clickable," and users can interact with content using keyboard commands.

28.    Defendant Adornmonde, Inc. owns, operates, and maintains the website **www.adornmonde.com**, which serves as the primary platform for product display, e-commerce transactions, promotional campaigns, and customer engagement under the "Adornmonde" brand.

29.    On **January 14, 2026**, Plaintiff attempted to purchase the Gold Maddox Heart Diamond Necklace from **www.adornmonde.com**. When navigating to the product page, her screen reader announced only "graphic" instead of describing the product image, due to four (4) instances of missing alternative text on product images. NVDA announced only "link" for each of the six (6) linked product images, providing no product name, description, or destination. Fourteen (14) spacer images on the page similarly lacked alternative text, each announced as "graphic" with no content communicated. Three (3) form controls on the page — including interactive elements for product options and the site search field — had no accessible labels, making them unidentifiable and unusable by NVDA. Two (2) additional form controls had empty label elements containing no text. Twenty-eight (28) buttons on the page contained no text or accessible label, announced by NVDA only as "button" with no purpose or action communicated. Unable to identify the product, evaluate its features, or interact with any purchasing controls, Plaintiff could not complete the transaction.

30.    On **March 10, 2026**, Plaintiff returned to **www.adornmonde.com** and attempted to access the Alfred Diamond Mini Hoop Piercing product page to purchase the Gold

Alfred Diamond Mini Hoop Piercing. Upon navigating to the product page, Plaintiff encountered sixty-six (66) WAVE-documented errors. NVDA announced only "graphic" for four (4) product images missing alternative text. Eight (8) linked product images missing alternative text were announced only as "link," with no product name, description, or destination. Eighteen (18) spacer images on the page were announced as "graphic" with no content communicated. Four (4) form controls lacked accessible labels, rendering interactive elements for product selection and site navigation unidentifiable to NVDA. Two (2) additional form controls had empty label elements with no text. Twenty-eight (28) buttons contained no text or accessible label and were announced by NVDA only as "button" with no purpose communicated. Two (2) empty links on the page were announced only as "link" with no purpose or destination. Plaintiff was unable to select a product variant, interact with any purchasing control, or add the item to her cart.

31.    On **May 19, 2026**, Plaintiff made a third attempt to access **www.adornmonde.com**. On this occasion, she attempted to purchase both the Gold Maddox Heart Diamond Necklace and the Gold Alfred Diamond Mini Hoop Piercing. Plaintiff encountered the same barriers as on her prior two visits, without any remediation: product images on both pages still lacked alternative text; linked product images remained without descriptive text, announced only as "link"; spacer images remained without alternative text, each announced as "graphic"; form labels on interactive controls remained missing or empty; and twenty-eight (28) empty buttons per page remained without announced purpose or action. Defendant's accessibility failures were unresolved despite the passage of approximately four months since Plaintiff's first visit.

32.    Plaintiff remains actively interested in returning to **www.adornmonde.com** to complete purchases and access promotional offers. Her intent to return is driven by necessity, not mere preference. The products she seeks — the Gold Maddox Heart Diamond Necklace

(US$402, 14-karat solid gold, lab diamond) and the Gold Alfred Diamond Mini Hoop Piercing (US$244, 14-karat solid gold, diamond, single earring) — are among the few fine jewelry products available on the market that are simultaneously crafted from solid 14-karat gold, feature conflict-free lab-grown diamonds, and are specifically designed for long-term hypoallergenic 24/7 wear, making them uniquely suited to Ms. Russo's medical needs arising from her Diabetic Retinopathy. The exclusion she experienced is repeatable, documented, and unresolved. She intends to return to Defendant's website as soon as the accessibility barriers are remediated. See *Calcano v. Swarovski North America Ltd.,* 36 F.4th 68, 75–76 (2d Cir. 2022) (plaintiff must allege non-speculative intent to return, grounded in specific identified products and specific identified reasons).

33.    Plaintiff's motivation is rooted in a medical and personal necessity for Adornmonde's unique product formulations. As a person with Diabetic Retinopathy, Ms. Russo requires jewelry crafted from hypoallergenic metals — specifically solid 14-karat gold — that do not cause skin irritation or allergic reactions in individuals with diabetes-related skin sensitivity. The Gold Maddox Heart Diamond Necklace provides a 14-karat solid gold chain and heart-shaped lab-diamond pendant — a material standard that eliminates metal allergies. The Gold Alfred Diamond Mini Hoop Piercing provides 14-karat solid gold with a diamond setting, designed specifically for 24/7 continuous wear without removal, which is critical for Plaintiff, whose Diabetic Retinopathy and limited vision make jewelry removal and re-insertion a safety risk. These are products Plaintiff specifically identified, specifically sought to purchase, and specifically intends to return to purchase once the barriers are remediated.

34.    A technical audit of **www.adornmonde.com** was conducted using the WAVE Web Accessibility Evaluation Tool. The audit confirmed Plaintiff's firsthand experience and identified the following violations on both the Gold Maddox Heart Diamond Necklace product page and the Gold Alfred Diamond Mini Hoop Piercing product page.  (Exhibit B)

- Missing alternative text on product images (4 instances per page)

- Linked images missing alternative text (6 instances on Necklace page; 8 instances on Piercing page)

- Spacer images missing alternative text (14 instances on Necklace page; 18 instances on Piercing page)

- Missing form labels (3 instances on Necklace page; 4 instances on Piercing page)

- Empty form labels (2 instances per page)

- Empty buttons (28 instances per page — buttons with no text or accessible label, announced only as "button")

- Empty links (2 instances on Piercing page only)

**(See Ex.B and C — WAVE Audit Reports)**

35.     These barriers are not isolated glitches. They reflect systemic design failures that deny Plaintiff the ability to shop independently. The absence of semantic structure, ARIA roles, and keyboard operability violates WCAG 2.1 Level AA and constitutes unlawful discrimination under Title III of the ADA, 42 U.S.C. § 12182. The persistence of these barriers across all three of Plaintiff's visits, unresolved over a period of four months, is particularly probative of systemic, willful non-compliance.

36.     Plaintiff alleges that Defendant has engaged in intentional discrimination through the following practices:

a. Constructing and maintaining a website inaccessible to visually-impaired individuals;

b. Failing to implement intuitive design for equal access; and

c. Failing to remediate barriers despite documented harm and repeated failures across multiple product pages.

37.    Defendant's standards and methods of administration perpetuate discrimination against blind users.

38.    The ADA expressly authorizes injunctive relief under 42 U.S.C. § 12188(a)(2), including orders to modify facilities and policies to ensure accessibility.

39.    Plaintiff seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist with WCAG 2.1 compliance. The injunction should require Defendant to:

a. Train developers on accessibility standards;

b. Conduct regular WCAG audits;

c. Test accessibility with blind users; and

d. Publish an accessibility policy with contact information.

40.    Without injunctive relief, Plaintiff and other blind consumers will continue to be excluded from Defendant's online channel of commerce. The harm is ongoing, repeatable, and preventable.

## CLASS ACTION ALLEGATIONS

41.    Plaintiff, SUSAN RUSSO on behalf of herself and all other persons similarly situated, seeks to certify a Nationwide Class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website, **www.adornmonde.com**, and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

42.    Plaintiff, on behalf of herself and all others similarly situated, seeks to certify a New York City Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York and State of New York who have attempted to access Defendant's Website, **www.adornmonde.com**, and as a result have been denied access to the equal

enjoyment of goods and services offered during the relevant statutory period.

43.    Common questions of law and fact exist amongst the Class, including but not limited to:

a. Whether Defendant's Website is a "public accommodation" under the ADA;

b. Whether Defendant's Website is a "place or provider of public accommodation" under the NYCHRL;

c. Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, and/or accommodations to people with visual disabilities, violating the ADA; and

d. Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYCHRL, NYCRL, and the NYSHRL.

44.    Plaintiff's claims are typical of the Class. Like other Class members, Plaintiff is legally blind, attempted to access **www.adornmonde.com** on specific dates (January 14, 2026, March 10, 2026, and May 19, 2026), sought specific products (the Gold Maddox Heart Diamond Necklace and the Gold Alfred Diamond Mini Hoop Piercing), and was denied equal access due to repeatable accessibility barriers. Plaintiff's failed attempts to interact with Defendant's website through inaccessible forms, buttons, and links mirror the experiences of other blind consumers nationwide.

45.    Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel who is competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members.

46.     **Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant** has acted or refused to act on grounds generally applicable to the **Class, making appropriate both declaratory and injunctive relief concerning Plaintiff** and the Class as a whole.

47.     Alternatively, Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

48.     Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

49.     Numerosity is satisfied because, upon information and belief, the number of blind and visually impaired individuals who have attempted to utilize Defendant's website exceeds fifty (50) nationwide, and includes numerous individuals in New York City and State.

## STATEMENT OF FACTS

50.     Plaintiff Susan Russo is a legally blind individual residing at 110 Lexington Avenue, Apt. 2F, New York, New York 10016. She has been diagnosed with Diabetic Retinopathy, a condition causing permanent, severe central and peripheral vision loss, with visual field limitation less than 20 degrees in her better eye, as documented in her Medical Diagnosis dated April 25, 2025 (Ex. A). Her condition qualifies as legal blindness under New York State standards and federal law. As a result of her disability, Ms. Russo is wholly unable to access digital content without the aid of NVDA screen-reading software.

51.     Defendant Adornmonde, Inc. is a corporation organized under the laws of the State of Nevada, having its principal place of business at 5555 Silver Hills Circle, Sparks,

Nevada 89431. Defendant was founded in 2014 and operates under the Adornmonde brand, offering a curated line of solid gold, diamond, and fine piercing jewelry, marketed under the proprietary *Lazy Girl Jewelry*® concept of solid gold earrings and piercing jewelry designed for 24/7 continuous wear. Defendant sells its products through its e-commerce website, **www.adornmonde.com**, which is accessible to consumers throughout the United States.

52.    **Adornmonde is a nationally recognized fine jewelry brand. Defendant markets and** sells products including solid gold piercing jewelry, fine earrings, necklaces, and bracelets through **www.adornmonde.com**. Defendant's products are manufactured from solid 14-karat and 18-karat gold, with conflict-free lab-grown and natural diamonds. Defendant ships to customers across the United States and internationally, and its website serves as the primary and exclusive retail channel for its full product line.

53.    The products Plaintiff specifically sought to purchase — the Gold Maddox Heart Diamond Necklace (US$402) and the Gold Alfred Diamond Mini Hoop Piercing (US$244) — are products that Plaintiff requires due to her medical condition. Plaintiff's Diabetic Retinopathy is associated with diabetes, which causes skin sensitivity and heightened susceptibility to metal allergens. The Gold Maddox Heart Diamond Necklace is crafted from 14-karat solid gold with a lab-grown diamond heart pendant — hypoallergenic construction that Plaintiff requires for safe daily wear. The Gold Alfred Diamond Mini Hoop Piercing is crafted from 14-karat solid gold with a diamond setting, and is specifically designed for continuous 24/7 wear without removal — a critical feature for Plaintiff, whose limited vision makes jewelry removal and reinsertion a safety risk. No other brand offers equivalent solid-gold, diamond-set, 24/7-wear piercing jewelry in the same combination of hypoallergenic material purity and design, making Adornmonde's website the uniquely necessary source for these products.

54.    On **January 14, 2026**, Plaintiff visited **www.adornmonde.com** and attempted

to locate and purchase the Gold Maddox Heart Diamond Necklace. Upon navigating to the product page, NVDA announced only "graphic" when encountering four (4) product images, providing no description of the product displayed. Six (6) linked product images on the page were announced by NVDA only as "link," without any product name, category, or destination. Fourteen (14) spacer images on the page were similarly announced as "graphic" with no content communicated, creating a disorienting and unusable page structure. Three (3) form controls on the page — including the site search field and product option selectors — had no accessible labels, making them unidentifiable and unusable by NVDA. Two (2) additional form controls had empty label elements containing no text, providing no accessible name to the screen reader. Twenty-eight (28) buttons on the page contained no text or accessible label and were announced by NVDA only as "button" with no purpose or action communicated. Plaintiff was unable to identify, select, or add the Gold Maddox Heart Diamond Necklace to her cart.

55.    On **March 10, 2026**, Plaintiff returned to **www.adornmonde.com** and navigated directly to the Alfred Diamond Mini Hoop Piercing product page to attempt to purchase the Gold Alfred Diamond Mini Hoop Piercing. Upon reaching the product page, Plaintiff encountered sixty-six (66) WAVE-documented errors. NVDA announced only "graphic" for four (4) product images with missing alternative text. Eight (8) linked product images on the page were announced only as "link," providing no product name, description, or destination. Eighteen (18) spacer images on the page were announced as "graphic" with no content communicated. Four (4) form controls lacked accessible labels, rendering interactive elements for product selection and site navigation unidentifiable to NVDA. Two (2) additional form controls had empty label elements with no text. Twenty-eight (28) buttons contained no text or accessible label and were announced by NVDA only as "button" with no purpose communicated. Two (2) empty links on the page were announced only as "link" with no purpose or destination. Plaintiff was unable to select a product variant, interact with any

purchasing control, or add the item to her cart.

56.    On **May 19, 2026**, Plaintiff made a third and final attempt to access **www.adornmonde.com**. On this occasion, she attempted to purchase both the Gold Maddox Heart Diamond Necklace and the Gold Alfred Diamond Mini Hoop Piercing. Plaintiff encountered the same barriers as on her prior two visits, without any remediation: product images on both pages still lacked alternative text; linked product images remained without descriptive text, announced only as "link"; fourteen (14) and eighteen (18) spacer images respectively remained without alternative text, each announced as "graphic"; form labels on interactive controls remained missing or empty; and twenty-eight (28) empty buttons per page remained without announced purpose or action. Two (2) empty links on the Piercing product page remained without communicated destination or purpose. Defendant's accessibility failures were unresolved despite the passage of approximately four months since Plaintiff's first visit.

57.    The access barriers encountered by Plaintiff directly correspond to, and are confirmed by, the WAVE Web Accessibility Evaluation Tool audits attached hereto as Exhibits B and C. The Gold Maddox Heart Diamond Necklace product page WAVE audit (Ex. B) documented fifty-nine (59) errors, including 4 missing alternative text errors, 6 linked images missing alternative text errors, 14 spacer images missing alternative text errors, 3 missing form label errors, 2 empty form label errors, and 28 empty button errors — each of which directly correlates to a barrier Plaintiff personally encountered on January 14, 2026 and May 19, 2026. The Gold Alfred Diamond Mini Hoop Piercing product page WAVE audit (Ex. C) documented sixty-six (66) errors, including 4 missing alternative text errors, 8 linked images missing alternative text errors, 18 spacer images missing alternative text errors, 4 missing form label errors, 2 empty form label errors, 28 empty button errors, and 2 empty link errors — each of which directly caused the barriers Plaintiff encountered on March 10, 2026 and May 19, 2026.

The WAVE reports confirm that these barriers are not the product of transient glitches but are systemic, code-level deficiencies that persisted across all of Plaintiff's visits.

58.    Notwithstanding the documented and persistent accessibility failures on **www.adornmonde.com**, Defendant has failed to take any steps to remediate the access barriers on its website, and the website remains inaccessible to blind and visually impaired individuals to the present day. Defendant's failure to remediate these barriers renders its conduct particularly egregious and supports a finding of willful and intentional discrimination.

**<u>FIRST CAUSE OF ACTION</u>**
**(Violations of the ADA, 42 U.S.C. § 12182 et seq.)**

59.    Plaintiff, SUSAN RUSSO on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

60.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

No individual shall be discriminated against on the basis of disability in

the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations of any place of public accommodation by

any person who owns, leases (or leases to), or operates a place of public

accommodation.  42 U.S.C. § 12182(a).

61.    Defendant's website, **www.adornmonde.com**, is a service offered to the general public and constitutes a "place of public accommodation" under Title III of the ADA.

62.    Plaintiff attempted to access **www.adornmonde.com** on January 14, 2026, to purchase the Gold Maddox Heart Diamond Necklace; on March 10, 2026, to purchase the Gold Alfred Diamond Mini Hoop Piercing; and on May 19, 2026, to purchase both the Gold Maddox Heart Diamond Necklace and the Gold Alfred Diamond Mini Hoop Piercing. On each occasion, she encountered accessibility barriers including missing alternative text on product images, linked images missing alternative text, spacer images missing alternative text, missing and empty form labels, empty buttons, and empty links that prevented her from completing

purchases and denied her equal access to Defendant's goods and services.

63.    Plaintiff also attempted to interact with Defendant's product controls and purchasing options on the Website, but the interactive form elements and buttons were unlabeled and inaccessible, preventing her from selecting product variants or completing any transaction.

64.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, *inter alia:*

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.  42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

65.    The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other

patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

66.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section Prayer For Relief below.

<u>**SECOND CAUSE OF ACTION**</u>
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

67.    Plaintiff, SUSAN RUSSO on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

68.    N.Y.C. Administrative Code § 8-107(4)(a) provides that:

"It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

69.    Defendant is subject to the NYCHRL because it owns and operates **www.adornmonde.com**, which is offered to the general public and constitutes a provider of public accommodation.

70.    Plaintiff attempted to access **www.adornmonde.com** on January 14, 2026, March 10, 2026, and May 19, 2026, to purchase the Gold Maddox Heart Diamond Necklace

and the Gold Alfred Diamond Mini Hoop Piercing. On each occasion, she encountered accessibility barriers that prevented her from completing purchases and denied her equal enjoyment of Defendant's services.

71.    Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to **www.adornmonde.com**, causing the website and its integrated services to remain inaccessible to blind users.

72.    Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 et seq.] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

73.    Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

74.    Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

75.    As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in

the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

76.    Defendant's actions were taken to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

77.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

78.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

79.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**THIRD CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

80.    Plaintiff, SUSAN RUSSO on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

81.    At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 et seq., covers the actions of the Defendant.

82.    Plaintiff, at all times relevant to this action, as a result of her Diabetic Retinopathy and resulting loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

83.    Defendant, at all relevant times to this action, owns and operates a place of

public accommodation, the subject Website, **www.adornmonde.com**, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

84.    Plaintiff has visited the Website on three (3) separate occasions and has encountered barriers to her access that exist and have persisted without remediation.

85.    Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

86.    Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

87.    Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

88.     The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

89.     Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is a well-established guideline for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

**90**.     Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

91.     Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

92.     Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) et seq.

**<u>FOURTH CAUSE OF ACTION</u>**
**(Violation of New York State Civil Rights)**
**("NYCRL")**

93.     Plaintiff, SUSAN RUSSO on behalf of herself and the New York City Subclass

Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

94.     Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General).

95.     Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

96.     No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

97.     § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

98.     Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, **www.adornmonde.com**, is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

99.     Defendant intentionally and willfully failed to remove the barriers on its Website, discriminating against the Plaintiff and Subclass and preventing access in violation of NYCRL § 40.

100.    Defendant has failed to take any steps to halt and correct its discriminatory conduct and continues to discriminate against the Plaintiff and the Subclass members.

101.    Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby ... in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*

102.    Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 et seq.

## FIFTH CAUSE OF ACTION
### (Declaratory Relief)

103.    Plaintiff, SUSAN RUSSO on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

**104.    An actual controversy has arisen and now exists between the parties in that Plaintiff** contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

105.    A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the

Complaint raises.

Dated: July 8, 2026
      New York, New York

                                             Respectfully submitted,
                                             **JOSEPH & NORINSBERG, LLC**
                                             */s/ Robert Schonfeld*
                                             Robert Schonfeld, Esq.
                                             *Attorneys for Plaintiff*
                                             825 Third Avenue, Suite 2100
                                             New York, New York 10022
                                             Tel. No.: (212) 227-5700
                                             Fax No.: (212) 656-1889